J. F. LINEBERGER, Appellant, v. RAY E. JOHNSON, Appellee.

No. 41104.

DECEMBER 17, 1931.

Leonard Simmer, for appellant.

John Fletcher, Attorney-general; Gerald O. Blake and Oral S. Swift, Assistant Attorney-generals, for appellees.

KINDIG, J.—The plaintiff-appellant, J. F. Lineberger, on December 5, 1930, shipped into Iowa one car of naphtha for the purpose of mixing the same in this state with casing-head gasoline to produce automobile motor fuel which would be sold within the state as such. Ray E. Johnson, the defendant-appellee, proceeded to collect a license fee or tax on the said naphtha under the theory that the product is gasoline, within the meaning of Sections 5093-a1 and 4755-b38 of the 1927 Code.

Appellant objected to the collection of the license or tax on naphtha for the reason that the same is not gasoline, as contemplated by the above-named statutes. Hence, in order to prevent the appellee, as State Treasurer, from collecting the license fee or tax, appellant brought this action for injunction in the district court. Upon a hearing in that court, the injunction was denied, and the appellant appeals.

In order to understand more clearly the question involved, it is necessary to study the aforesaid statutes. Section 4755-b38, supra, provides:

"There is hereby levied on all gasoline imported and used within this state a license fee of one cent per gallon, which shall be in addition to the license fee levied by Chapter 251-A1. All of the provisions and conditions of said chapter 251-A1 relating to the levy, collection or payment of the license fee on gasoline

shall apply with equal force to the license fee levied herein. Out of the proceeds of said additional license fee the state highway commission shall, each year, set aside a sufficient amount to pay the portion of the bridge and right of way refund becoming due and payable on January first of the succeeding year. The remainder of the proceeds of said additional license fee shall be credited to the primary road fund.''

Section 5093-a1, supra, in Chapter 251-A1, reads:

''A license fee of two cents per gallon or fraction of a gallon is hereby imposed on all gasoline used or otherwise disposed of in this state for any purpose whatsoever. Any person using gasoline within the state shall be liable for the fee herein provided for unless the same shall have been previously paid. License fees shall be collected and disposed of in the manner hereinafter provided.''

Those are the statutory provisions which were in force at the time appellant shipped into Iowa, for use here, the carload of naphtha above named. These statutes have since been amended, and now, under the corresponding sections of the 1931 Code, the tax or fee is collected for the importation of ''all motor vehicle fuel.'' Furthermore, Chapter 251-D1 of the 1931 Code defines fuel, and fixes a standard of tests and specifications therefor. It need not now be determined whether Chapter 251-D1 of the 1931 Code defines naphtha as motor fuel, because the 1927 and not the 1931 Code applies to the shipment of the carload of naphtha now under consideration.

So the question to be determined is whether, under the above-quoted sections of the 1927 Code, the naphtha in question is gasoline, as contemplated by the legislature. Both appellant and appellee concede that the car in question contained naphtha. Appellees contend that naphtha is gasoline. They assert that the words may be used interchangeably. On the other hand, appellant argues that naphtha is not gasoline. Naphtha and gasoline, appellant maintains, are two separate and distinct products. Benzol is not gasoline under this statute. State v. Northern Iowa Oil Co., 209 Iowa 980. But appellees argue that benzol is a coal-tar product, while naphtha is a petroleum product. That is admitted by appellant. The Northern Iowa Oil Co. case, supra, therefore is not decisive of this controversy.

Consequently the question for determination here has not before been decided. A problem of fact, rather than law, is here presented. Cases are cited by the parties from other jurisdictions. While the discussions contained in these authorities are enlightening, the decisions themselves are of little use, because the respective state governments, as well as the Federal government, have material legislation upon the subject, in addition to department rules and regulations. Such legislation, rules, and regulations would necessarily affect the judicial opinion upon the subject. However, it is helpful to note the conclusions reached under the evidence introduced in some of the cases named.

In United States v. Gulf Refining Co., 268 U. S. 542, the Supreme Court of the United States said, concerning naphtha:

"The first distillation of crude oil takes off the elements more volatile than kerosene, and these taken together are known as the 'naphtha fraction.' After treatment with sulphuric acid, this fraction is divided by further distillation into three products,—gasoline, the lightest, benzine, the intermediate, and naphtha, which is called 'painter's naphtha,' the heaviest. The gravity of such naphtha is around 54 degrees (Baumé). Casinghead gasoline is produced by compression of gases which come from oil wells."

Again, in O'Hara v. Nelson, 63 Atl. 836 (N. J.) it is said:

"(The) testimony shows that what is commonly termed 'gasoline' is the fourth distillate of crude petroleum."

Manifestly, as before indicated, the question here involved cannot be answered by reference alone to the adjudicated cases. A produce might be gasoline under one statute, and something else under another. Necessarily, then, it is imperative to determine the present controversy in accordance with the Iowa statute and the evidence introduced in this case.

Evidence in the nature of affidavits was introduced in the case at bar by the respective parties. There was no cross-examination of witnesses. No objection is made to the admissibility of the affidavits, and all objections to the nature of the proceedings are waived. What might have been the final result of

the testimony of the various affiants, had the witnesses been cross-examined in the regular way, of course is not known.

Under the affidavits, however, it is clear that naphtha is not gasoline, as understood in the trade, and the terms cannot be used interchangeably without modifications. F. M. Rogers, Chief Chemist of the Standard Oil Company of Indiana, testified to this effect:

"The terms 'gasoline' and 'naphtha' have been used in a rather loose manner. There are no precise definitions of the two terms in the literature so far as I know."

Continuing, however, the witness said:

"There has been a tendency in recent years to apply the term 'gasoline' to the products which are used as fuel in automobile and aviation engines. Other volatile products lighter than kerosene are usually termed 'naphtha.' "

While the witness continued by saying that certain naphtha might be called gasoline, he concluded with the statement that most products marketed as naphtha would not make satisfactory motor fuels. Certain naphthas, this witness said, might constitute a satisfactory fuel for aviation engines, but would not be suitable for an automobile engine.

Joseph G. Hawthorne, a chemical engineer of the Kansas City Testing Laboratory, declared:

"Naphthas are usually mixtures of petroleum hydrocarbons which have initial boiling points higher than the initial boiling points of gasoline and may or may not have an end point lower than those of gasoline. The naphthas which appear in the petroleum industry are usually for some specific purpose, such as turpentine substitute, dry cleaning naphtha, or naphtha used for blending the gasoline production. The naphtha ordinarily used for gasoline production is a naphtha having an initial boiling point of approximately 200 degrees F. and an end point of about 450 degrees F. Such a naphtha is blended with lighter petroleum distillates known as natural or casing-head gasoline, and the mixture of the natural gasoline and the naphtha produces a hydrocarbon mixture which will lie within the limits of the general definition of gasoline."

Jay Blount Mull said in his affidavit that naphtha is a loose term, but finally concludes by saying:

"Naphtha is refined from the gasoline fraction of the crude petroleum, and in the industry is usually used to refer to that particular distillate having a somewhat higher initial boiling point than the ordinary gasoline that is used for motor fuel, but at the same time is considerably more volatile than ordinary kerosene."

The expert witnesses Tansel, Cogan, Finston, Bennett, Brown, Fox, and Poisner testify that naphtha is not gasoline and that the words can not be used interchangeably. In substance, all of this group of witnesses declare, as did the said Poisner:

"Gasoline is that product derived from the refining of crude oil that is suitable for the operation of modern automobiles. Naphtha is a product of petroleum crude which is commercially used for various purposes, but which is not suitable for the efficient operation of the modern automobile. The terms 'gasoline' and 'naphtha' are used to define two separate and distinct products, and are not interchangeable."

Brown, the affiant above named, stated:

"The term naphtha was originally used in the petroleum industry to indicate the first, or most volatile, fraction or cut removed from crude oil. In the days before the wide-spread use of the motor car, when kerosene or some burning oil was the major product of the refineries, naphtha was used to designate that product too volatile to include in the kerosene. In (those) early days of the industry, naphtha was originally a waste product. With the development of the motor car and the increasing demand for volatile motor fuel, the more volatile material produced from crude oil rapidly became the major product of the industry. The term naphtha, however, was continued in use to indicate the first cut collected in the distillation of crude oil. * * * The trade does not recognize that the terms gasoline and naphtha are interchangeable."

Carriers recognize a distinction between naphtha and gasoline for shipment purposes, and the United States government will not permit a naphtha substance to be shipped as gasoline.

Clearly, then, the greater weight of the evidence indicates that naphtha is not gasoline, as known in the industry.

This record is strengthened by appellees' answer and stipulation. Appellees said in their answer:

"By way of affirmative defense defendants (appellees) allege that the naphtha mentioned in Paragraph 1 of plaintiff's (appellant's) petition (the carload thereof in question) was shipped into Iowa *for the purpose of blending with other petroleum products to form gasoline.*" (The italics are ours).

Obviously, according to the pleader, naphtha was not gasoline, but the mixing of naphtha with other petroleum products would produce gasoline.

Again in the stipulation it is admitted "that said naphtha (the carload in question) is to be mixed within the state of Iowa, with casing-head gasoline, the blending of such naphtha and casing-head gasoline to produce automobile motor fuel." Gasoline itself is a motor fuel. An inference from the stipulation is that the naphtha in question is not a motor fuel, because the purpose of importing it was to mix that product with casing-head gasoline to *produce automobile motor fuel.* Produce means to bring forth. Hence, the motor fuel under the stipulation does not exist until brought forth by blending naphtha with casing-head gasoline. When the statutes in question were first enacted, appellees themselves interpreted the word "gasoline" specified therein as not to include naphtha; for during the first few years of administration under those statutes the state treasurer did not collect a tax on naphtha. It was only recently that the appellees have contended that naphtha could be taxed as gasoline.

Under all the facts and circumstances above discussed, it is apparent that the naphtha imported is not gasoline, as contemplated by the statute. Appellant is entitled to an injunction to restrain the collection of the fee or tax. By so concluding, we do not decide that the blended product would be untaxable. See People v. Sterling Refining Co., 261 Pac. (Cal.) 1080, 1082.

Therefore, the judgment and decree of the district court must be, and hereby is, reversed.—Reversed.

FAVILLE, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.