## ADVANCE REALTY COMPANY v. SPANOS.

1. WORDS AND PHRASES—PRODUCE.

   The verb "produce" means "to bring forward; to lead forth; to offer to view or notice; to exhibit; show, as to produce a witness in court; to cause to be or to happen; to bring about."

2. BROKERS—CONSTRUCTION OF EXCLUSIVE LISTING AGREEMENT—PRODUCE A PURCHASER.

   The word "produce," as used in real-estate broker's exclusive listing agreement, means "to bring forth" a purchaser.

3. SAME—SUBAGENT AS PROCURING CAUSE OF SALE.

   It is immaterial that the purchaser of real estate be secured through the efforts of a subagent rather than by the personal efforts of the broker himself, so far as recovery of a commission from the vendor is concerned.

4. SAME—SUBAGENT AS PROCURING CAUSE OF SALE.

   The broker with whom property has been listed is deemed to be the procuring cause of a sale to one interested in the property by a subagent.

5. SAME—PROCURING CAUSE OF SALE.

   The test of a real-estate agent's right to a commission is generally whether or not he was the procuring or the producing cause of the sale; the question as to whether or not the agent is the producing cause being one for the jury if the evidence is in conflict.

6. SAME—RIGHT TO COMMISSION—REFUSAL TO SELL.

   A real-estate broker who furnishes a buyer for property, ready,

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 8 Am Jur, Brokers §§ 174, 175.
[3] 8 Am Jur, Brokers §§ 148, 151.
[4] 8 Am Jur, Brokers § 150.
[5] 8 Am Jur, Brokers § 172.
[6, 7] 8 Am Jur, Brokers §§ 174, 184.
[8] 53 Am Jur, Trial §§ 357–361.

willing and able to complete the purchase on the owner's terms, is entitled to the agreed commission if the owner wrongfully refuses to complete the sale.

7. SAME—PROCURING CAUSE OF SALE—SUBAGENT—OWNER'S WRONGFUL REFUSAL TO SELL.

A real-estate broker who produces a buyer for property under an exclusive listing agreement is entitled to commission, notwithstanding the owner wrongfully declined to complete the sale and notwithstanding the broker procures the purchaser, ready, willing and able to make the purchase, through the efforts of a subagent.

8. TRIAL—DIRECTED VERDICT—ABSENCE OF ISSUE OF FACT.

Verdict was properly directed for plaintiff, where no issue of fact was presented to jury and both parties moved for a directed verdict.

Appeal from Ingham; Hayden (Charles H.), J. Submitted April 4, 1957. (Docket No. 32, Calendar No. 47,207.) Decided June 3, 1957.

Action by Advance Realty Company, a Michigan corporation, against Kora Spanos for real-estate sales commission. Judgment for plaintiff. Defendant appeals. Affirmed.

*Hammond & Schram,* for plaintiff.

*Sinas, Dramis & Brake* (*Lee C. Dramis,* of counsel), for defendant.

EDWARDS, J. Plaintiff real-estate company brought suit for a $700 real-estate commission claimed to have been due it as the result of an exclusive real-estate agency contract for the sale of defendant's house. The facts are not in dispute. The agency contract provided in its crucial paragraph as follows:

"If during said period, the property is sold by you or me or anyone else; or if you or any member

of the Lansing Board of Realtors produce a purchaser ready, willing and able to purchase the property; or if it shall be sold within 3 months after the expiration to any persons with whom you or any member of the Lansing Board of Realtors has had negotiations for the sale thereof I (we) agree to pay you a commission of 5% upon the purchase price procured for said property or 3% upon exchange. Minimum commission $50."

Following the execution of the agency contract plaintiff put a sign on the property, advertised it in the Lansing State Journal and made efforts to sell it.

On February 16, 1955, one Laurah A. Morton made an offer in writing through Marguerite R. Moore, a real-estate broker not a member of the Lansing Board of Realtors, to purchase defendant's property for $14,000 cash. The parties agree that this offer was in accordance with the terms of the listing agreement and that the deposit therein required was made. It is conceded that Mrs. Morton was ready, able and willing to purchase the property and consummate the deal. It is further conceded that plaintiff had no prior knowledge of anyone other than defendant having any interest in the property.

The agreed appendix on appeal further recites that when plaintiff took the offer of Mrs. Morton to the defendant, she refused to accept it, giving as a reason that her niece had a half interest in the property. It further indicates that at some time subsequent to this, defendant sold the property for $16,000.

At the conclusion of the plaintiff's testimony defendant moved for a directed verdict on the facts as recited and the motion was denied. Defendant then rested without putting in any proofs and again moved for directed verdict which was again denied.

Thereupon plaintiff moved for a directed verdict for $700, plus costs, and this motion was granted.

The sole question in this case is whether the facts recited above represent compliance with the provision of the exclusive sales contract previously quoted, "or if you or any member of the Lansing Board of Realtors produce a purchaser ready, willing and able to purchase the property."

Appellant states the issue as follows:

"Defendant admits that the purchaser who plaintiff claims to have 'produced' was 'ready, willing and able to purchase.' The sole issue is did plaintiff 'produce' this purchaser. Defendant did not obligate herself to pay a commission unless a purchaser was 'produced' by plaintiff 'or any member of the Lansing Board of Realtors.' It is undisputed that Marguerite Moore, broker, was not a member of the Lansing Board of Realtors. Plaintiff's witness, Virginia Sirhal, testified clearly and unequivocally, that Marguerite Moore, broker, 'produced' the offer from Laurah Morton who is the only purchaser plaintiff relies on. In light of these facts, how can it be said that there was any evidence presented from which the jury could find that plaintiff 'produced' a purchaser, yet that is what the trial court had to find in order to deny defendant's motion for directed verdict."

The answer to the question turns on the definition of the verb "produce." Among the definitions of this verb in Webster's New International Dictionary (2d ed), p 1974, are the following: "to bring forward; to lead forth; to offer to view or notice; to exhibit; show; as, to *produce* a witness in court; * * * to cause to be or to happen; * * * to bring about."

We believe that in the current context the verb "produce" may properly be held to have the meaning of "to bring forth" (*Lineberger* v. *Johnson*, 213

Iowa 800, 806 [239 NW 679, 682]; *Spiller* v. *Mc-Gehee* (Tex Civ App), 68 SW2d 1093, 1095) or "to be the cause of" (*Elder* v. *State,* 162 Ala 41, 52 [50 S 370, 373, 374]).

See, also, 72 CJS, Produce, pp 1208, 1209.

From the facts recited above it is obvious that as between the instant plaintiff-appellee and defendant-appellant, plaintiff brought the offer to the defendant as a result of a prior contact with the Moore agency. All of the prospective purchaser's contact with defendant was through the plaintiff. In effect, the Moore agency was a subagent of the plaintiff in securing a purchaser.

On the point in question, 8 Am Jur, Brokers, § 151, p 1075, says as follows:

"As between principal and real-estate broker, it is generally considered immaterial that the purchaser of the real estate is secured through the efforts of a subagent, rather than by the personal efforts of the broker himself."

The legal point involved is dealt with squarely in an annotation (and cases cited thereunder) in 3 ALR2d 535:

"The broker with whom the property has been listed is deemed to be the procuring cause of the sale to one interested by a subagent."

Michigan has frequently held that the test of a real-estate agent's right to a commission was generally whether or not he was the procuring or the producing cause of the sale; and where the evidence was in conflict, this question was generally held a jury question. *Wood* v. *Wells,* 103 Mich 320; *Reade* v. *Haak,* 147 Mich 42; *Beatty* v. *Goodrich,* 224 Mich 538.

It is, of course, settled law in Michigan as well as in other States (there being nothing in the sales agreement to the contrary) that a real-estate broker

who furnishes a buyer for property, ready, willing and able to complete the purchase on the owner's terms, is entitled to his agreed compensation if the owner wrongfully refuses to complete the sale. *Blakeslee* v. *Peabody,* 180 Mich 408; *Hooley* v. *Alpena National Bank,* 256 Mich 269; 169 ALR 605; 3 Callaghan's Michigan Digest, Brokers, §§ 39, 42.

Cases exactly in point with the facts recited above are, however, scarce. Recovery was allowed to the agent of the seller, as "the procuring cause," in the 3 cases cited below where, as here, the sale was made through the offices of a subagent who was unknown to the seller. *Carter* v. *Webster,* 79 Ill 435; *Shannon* v. *Potts,* 117 Ill App 80; *Boyd & Williams* v. *J. J. Watson & Co.,* 101 Iowa 214 (70 NW 120).

The Michigan cases closest in point to the above appear to be: *Brooks* v. *Leathers,* 112 Mich 463; *Hannan Real Estate Exchange* v. *Davis,* 238 Mich 257. In this latter case, the fact situation and holding are succinctly set forth on p 258:

"The writing evidencing the engagement is:
" '*Hannan Real Estate Exchange:*
" 'In the event you secure a purchaser for the above described property at the price stated, or at any other price and terms agreeable to me, I will pay you the Detroit real-estate board commission of 3% of said price, and you are hereby authorized to put a "For Sale" sign on said property and to remove all other signs.
(Sgd.) " 'C. S. Davis.'
"Another real-estate agency intervening, plaintiff was not permitted to consummate a sale, and it was not required to do so. It did procure a purchaser who bought the property on terms satisfactory to defendant."

We believe that the word "produce" in our instant contract has the same general meaning as the words "secure" or "procure" as they are used in the

cases cited above. Here, the defendant wanted to sell a house—plaintiff undertook to "produce" a buyer. Plaintiff advertised the house and brought defendant a buyer ready, willing and able to pay her terms. We do not believe that the assistance of a subagent toward this result defeats the agent's claim.

We concur with the trial judge, "The plaintiff produced a purchaser. It was to the benefit of Mrs. Spanos, but she then did not * * * choose to sell." Hence, plaintiff, for the reasons outlined above, became entitled to the commission provided for by the exclusive sales agreement.

We agree with the trial judge, also, in holding that on this record there was no issue of fact to be presented to the jury, and that, on motion for directed verdict by both parties, the directed verdict for plaintiff was properly entered. *Funk* v. *United States Fidelity & Guaranty Co.*, 224 Mich 95; *Hannan Real Estate Exchange* v. *Davis, supra; Stratford Arms Hotel Co.* v. *General Casualty & Surety Co.*, 249 Mich 518.

Judgment of the trial court is affirmed, with costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.