BOURDON *v.* READ

1. DAMAGES—MEASURE OF DAMAGES—LOSS OF EARNING CAPACITY.
    The measure of damages accruing to one rendered temporarily unemployable by an automobile accident is the loss of earning capacity, not a specified number of dollars lost in wages or salary.

2. DAMAGES—MEASURE OF DAMAGES—EARNING CAPACITY.
    Salary and wages are not the only measure of earning capacity.

3. DAMAGES—MEASURE OF DAMAGES—LOSS OF EARNING CAPACITY—FRINGE BENEFITS.
    A diminution in earning capacity is reflected as much in the loss of fringe benefits as in loss of wages from inability to work.

4. DAMAGES—RECOVERY FROM TORTFEASOR—COLLATERAL SOURCE RULE—HOSPITAL AND MEDICAL EXPENSES.
    An injured party may recover his hospital and medical expenses incurred from the injury producing accident from the tortfeasor even though he has received compensation for them from a source other than another tortfeasor.

5. DAMAGES — RECOVERY FROM TORTFEASOR — COLLATERAL SOURCE RULE.
    A plaintiff who receives benefits, whatever the form, from a source independent of the wrongdoer does not, under the "collateral source" rule, diminish the damages otherwise recoverable from the tortfeasor.

6. DAMAGES—HOSPITAL AND MEDICAL INSURANCE COVERAGE.
    Plaintiff was entitled to recover the expense of her hospital and medical insurance coverage as part of the loss of her earn-

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 22 Am Jur 2d, Damages §§ 89–101.
[4, 5] 22 Am Jur 2d, Damages §§ 206, 207, 210, 330.
[6] 22 Am Jur 2d, Damages § 210.
[7] 31 Am Jur 2d, Expert and Opinion Evidence §§ 42, 43.
[8] 53 Am Jur, Trial §§ 559, 633, 749.

ing capacity from the tortfeasor where she would have been entitled to medical and hospital coverage from her employer as fringe benefits even though she never made the necessary application for coverage.

7. WITNESSES—EXPERT WITNESS—OPINION TESTIMONY—REPORT OF THIRD PERSON.

Admitting opinion testimony of plaintiff's treating physician, based in part on a radiologist's X-ray report, was not error where the trial court allowed only the conclusions of the treating physician and not the conclusions of the radiologist, and where the court properly instructed the jury as to the weight and credibility of the expert testimony and instructed the jury that any conflicts in the testimony of the experts were to be resolved by the jury.

8. TRIAL—INSTRUCTIONS TO JURY—REPETITION.

Repetition in the court's instructions to the jury is not necessarily error.

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 January 6, 1971, at Lansing. (Docket No. 8827.) Decided February 18, 1971.

Complaint by William Bourdon, for himself and as next friend of Vickie Bourdon, his daughter, against Carl Clifford Read for damages for injuries in an automobile accident. Defendant admitted liability. Verdict and judgment on damages for plaintiff. Defendant appeals. Affirmed.

*Stiles & Fowler,* for plaintiff.

*William L. Mackay,* for defendant.

Before: QUINN, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. In this automobile negligence action brought by William Bourdon, individually and as

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

next friend of Vickie Bourdon, his daughter, defendant admitted liability in that the operator of his vehicle struck the rear end of the car in which the girl was riding.   This left only the question of damages for determination.   From the jury verdict awarding Vickie $4,600 and her father $155, defendant appeals of right.

Dr. Donald G. Bearden, Vickie's treating physician, testified that the girl had come to him after the accident complaining of pain in the neck and lower back.   He noted that she had restricted movements and diagnosed her condition as a "traumatic sprain[1] of the cervical and lumbar area".   After her initial visit on December 27, 1967, Vickie received periodic treatment through April 1968.   At that time her apparent recovery dictated cessation of treatment.   In December of 1968 she began to experience similar symptoms and commenced seeing Dr. Bearden again.   In connection with arriving at his diagnosis, Dr. Bearden referred Vickie to Dr. Wells, a radiologist, in order to have some X-rays taken.

During the course of Dr. Bearden's testimony, he began to interpret, over defendant's objection, the X-ray report.   Such testimony was admitted into evidence but was confined to what Dr. Bearden's professional opinion was even though that opinion was in part based on Dr. Wells's report.   Dr. Bearden concluded that Vickie was suffering from "acute muscle spasms of the lower back" and that she had also experienced a "shortening or lowering of the sacro base".   He further indicated that, in his opinion, the condition would likely be a recurrent one.

Defendant claims as error (1) the inclusion of a claim for fringe benefits, such as hospital and medical insurance coverage, in ascertaining the extent to which Vickie's earning capacity was adversely

---

[1] Sometimes referred to herein as "strain".

affected; (2) admitting, over objection, opinion evidence of plaintiff's physician based in part on an X-ray report by a radiologist not present and testifying; and (3) that the charge to the jury prejudicially affected the outcome of the case by unwarranted emphasis on the element of pain and suffering.

During the examination of the bookkeeper of Vickie's employer, he testified, over objection, that the girl would have been entitled to medical or hospital benefits but that she apparently had not made the necessary application for such coverage. In measuring damages accruing to one rendered temporarily unemployable by an automobile accident, our concern is with loss of earning capacity rather than a specified number of dollars lost in wages or salary. *Canning* v. *Hannaford* (1964), 373 Mich 41; *Prince* v. *Lott* (1963), 369 Mich 606; *Harris* v. *Wiener* (1961), 362 Mich 656. We further note that salary and wages are not the only measure of earning. *Canning, supra,* p 44.

A diminution in earning capacity is reflected as much in loss of fringe benefits, such as hospital and medical insurance, as the more obvious loss of wages resultant from an inability to be gainfully employed. Nor can we regard as determinative the fact that Vickie never applied for or received these benefits.

Inasmuch as an injured party may recover his hospital and medical expenses from the tortfeasor, even though he previously has received compensation for them from a source other than another tortfeasor, the injured party in the instant case should be entitled to recover hospital and medical expenses accrued as a result of the accident. *Royer* v. *Eskovitz* (1960), 358 Mich 279. See, also, 22 Am Jur 2d, Damages, §§ 206–211, pp 286–297, which indicates

that under the "collateral source" rule that a plaintiff who receives benefits, whatever the form, from a source independent of the wrongdoer does not thereby diminish the damages otherwise recoverable from the tortfeasor.

Turning to the second ground alleged by defendant as a basis for reversal of judgment, we now consider the admissibility of Dr. Bearden's expert opinion evidence based in part on the X-ray report of the radiologist.

In allowing plaintiff's counsel to elicit the treating physician's medical conclusions, the trial court succinctly enumerated what it viewed as the pertinent considerations:

"I am going to sustain the objections to that question as to what the findings of Dr. Wells was [sic]. This court recognizes that in the medical profession the calling for X-rays is a common accepted practice in the getting of an X-ray report made by someone else other than the attending physician is common practice today. The court further recognizes that a physician relies upon these reports of the radiologist oftentimes relying thereon before or in the course of surgery. There is an argument that can well be made that if these reports are sufficiently reliable to warrant the attending physician relying upon them and proceeding on to surgery, etc., they ought to be reliable enough for a jury in a damage action. However, I believe the question as worded is objectionable. I do not believe it is objectionable to ask this doctor what his conclusions are and I'm speaking of the conclusions of this doctor, and recognizing then that his conclusions may be based in part upon what the radiologist has told him, but I think, Mr. Fowler, the court would prefer that the conclusion be the conclusion of this doctor."

While defendant's objections might otherwise be well taken, the court notes with approval the admir-

able professional candor of counsel in stating that this assignment of error was necessarily diluted by the presence of defendant's own medical expert. Futhermore, the able trial judge correctly framed the instruction to the jury relative to weight and credibility of expert testimony and he charged that they, as trier of fact, would resolve the conflicts, if any, between the testimony of opposing expert witnesses.

In light of the unusual circumstances, and the corresponding lack of clarity with which the question of admissibility of the X-ray report is presented on appeal, the Court is of the opinion that it would be manifestly inappropriate for us to formulate a rule having such an impact on the jurisprudence of our state in the absence of compelling necessity to do so.

Defendant's final allegation is that the court below committed reversible error in its jury instructions. He submits that the trial court erred when the jury was instructed that, if they found for plaintiff, they would award damages for loss of wages "up to the present time". A review of the record below indicates that after defendant's objection the court corrected its instruction relative to loss of wages, making it sufficiently clear that "lost wages" would be those already suffered rather than those which might accrue in the future. Consequently, this instruction was not error.

Additionally, defendant argues that excessive emphasis on "pain and suffering" prejudicially affected the outcome since the award of $4,600 cannot be supported by the expert testimony adduced. However, the failure of defendant to make timely objection below with regard to alleged over-emphasis on pain and suffering precludes consideration of this objection on appeal. GCR 1963, 516.2. More-

over, it is well-established in Michigan that repetition in the court's instruction is not necessarily error. *Barber* v. *Vernon* (1967), 8 Mich App 116; *Eastman* v. *Ann Arbor R. Co.* (1966), 4 Mich App 540.

Based upon our review of the entire charge, as we are directed to do by prior holdings, and the fact that damages awarded are not excessive, we are of the opinion that no reversible error was committed. *Bauman* v. *Grand Trunk W. R. Co.* (1969), 18 Mich App 450; *Kujawski* v. *Boyne Mountain Lodge* (1968), 11 Mich App 641; *Rentfrow* v. *Grand Trunk W. R. Co.* (1968), 9 Mich App 655; *Baker* v. *Saginaw City Lines, Inc.* (1962), 366 Mich 180; *Middleton* v. *Smigielski* (1962), 366 Mich 302.

Accordingly, we affirm the decision of the lower court. Costs to plaintiff.

All concurred.