# STATE OF MICHIGAN

# COURT OF APPEALS

MARKEL AMERICAN INSURANCE
COMPANY,

        Plaintiff,

v

TARA GATES, ERICK JOHNSON, JEROME
JOHNSON, and VOIL DORSEY,

        Defendants,

and

ALDEELUR REHMAN and L.C. BARNES,

        Defendant-Appellees,

and

BRODER & SACHSE REAL ESTATE
SERVICES INC., PLAZA SOUTH
APARTMENTS LIMITED PARTNERSHIP, and
ZURICH AMERICAN INSURANCE
COMPANY,

        Defendant-Appellants.

UNPUBLISHED
May 28, 2015

No. 320587
Wayne Circuit Court
LC No. 13-003161-CK

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

-1-

Defendant-appellants Broder & Sachse Real Estate Services, Inc. (Broder), Plaza South Apartments Limited Partnership,[1] and Zurich American Insurance Company (Zurich) appeal as of right an order distributing interpleaded funds and denying their motion for reconsideration in this interpleader action. On appeal, Broder and Zurich argue that the trial court erred in precluding Zurich from recovering its subrogated interest from shared insurance proceeds. We reverse and remand for proceedings consistent with this opinion.

The basic facts are undisputed. On August 17, 2012, an apartment complex owned and managed by Broder caught fire, resulting in property damage. A tenant, Nephatterria Bowles, caused the fire. Bowles had renter's liability insurance coverage through plaintiff, Markel American Insurance Company (Markel), which provided $50,000 personal liability coverage. Markel brought this interpleader action, and deposited the $50,000 interpleaded funds with the trial court. Defendants Broder, Zurich, Aldeelur Rehman, and L.C. Barnes asserted claims to the $50,000. Rehman and Barnes were tenants of the apartment complex, and had claims based on damage to personal property. Broder, as the owner of the apartment complex, had independent insurance coverage; Zurich was its insurer. Broder valued its total property damage from the fire as $995,000. Pursuant to the insurance policy between Zurich and Broder, Zurich paid $990,000 to Broder. Broder was left with a $5,000 uninsured deductible loss. In lieu of an evidentiary hearing, the parties submitted briefs regarding the appropriate proration of the $50,000, and the trial court decided the issue based on the parties' briefs. The trial court ordered that Rehman's and Barnes's claims would be reduced because neither party had the requisite renter's insurance required by their leases. The trial court further held that, although Barnes and Rehman were not "co-insured" with Broder under the Zurich policy, the made whole doctrine applied and Zurich was precluded from recovering any of the interpleaded funds. The trial court divided the funds between Broder, Rehman, and Barnes pro rata. Broder and Zurich filed a motion for reconsideration, which was denied. Broder and Zurich now appeal.

Zurich and Broder argue that the trial court erred in refusing to allow Zurich to recover from the interpleaded fund. According to Zurich and Broder, the trial court erroneously applied the made whole doctrine, which only applies between an insured and an insurer. Rather, the court should have applied the collateral source rule. Rehman[2] asserts that the court correctly applied the made whole doctrine, but concedes that he must be co-insured with Broder by Zurich in order for the made whole doctrine to apply.[3] We agree with Broder and Zurich that the trial court erred in applying the made whole doctrine when distributing the interpleaded funds.

---

[1] Broder and Plaza South Apartments Limited Partnership are referred to collectively in this opinion as "Broder," because the parties commonly owned the property at issue and their interest and position are identical in this proceeding.

[2] Barnes did not file a brief on appeal.

[3] Zurich and Broder assert that Rehman's argument that he was co-insured under the Zurich policy is unpreserved because Rehman did not file a cross-appeal from the trial court's ruling that Rehman was not co-insured. We disagree. Zurich and Broder rely on *McCardel v Smolen*, 404 Mich 89, 95 n 6; 273 NW2d 3 (1978), which provides that "[i]n the absence of a cross

The parties' dispute centers on the application of two doctrines. First, Zurich and Broder assert that the collateral source doctrine applies. In contrast, Rehman argues the made whole doctrine applies. This Court reviews questions of law de novo and findings of fact for clear error. *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).[4]

"The collateral source rule provides that compensation due [to] an injured person from an independent source other than another tortfeasor does not operate to lessen damages recoverable from the wrong-doer." *Lynch v Sign of The Beefeater, Inc*, 90 Mich App 358, 363; 282 NW2d 321 (1979), rev'd on other grounds 407 Mich 866 (1979); see also *Bourdon v Read*, 30 Mich App 681, 684; 186 NW2d 737 (1971). Specifically, in regard to insurance, the Michigan Supreme Court has held:

> The common-law collateral-source rule provides that the recovery of damages from a tortfeasor is not reduced by the plaintiff's receipt of money in compensation for his injuries from other sources. In the context of insurance, the rationale for the rule is that the plaintiff has given up consideration and is entitled to the contractual benefits. The plaintiff's foresight and financial sacrifice should not inure to the benefit of the tortfeasor, who has contributed nothing to the plaintiff's insurance coverage. Similarly, gratuitous compensation should not inure to the benefit of the tortfeasor. The tortfeasor has contributed nothing, except the activity which caused the plaintiff's injuries. [*Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d 181 (1984); see also *Greer v Advantage Health*, 305 Mich App 192, 207-208; 852 NW2d 198 (2014).]

Zurich and Broder assert that the collateral source rule applies to Broder, in that Broder's claim against Bowles is not diminished because of Zurich's payment of the insurance policy. Accordingly, because Zurich is a subrogee of Broder, the collateral source doctrine extends to Zurich. Subrogation "is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the

---

appeal, errors claimed to be prejudicial to appellee cannot be considered nor may appellee have an enlargement of relief." We disagree with Zurich and Broder's interpretation of this proposition. Rehman asserts the same position that he argued in the trial court, and is not requesting greater relief than he was granted. An appellee may argue alternative grounds for affirmance that do not enhance the decision for the appellee beyond that rendered by the trial court. *Vanslembrouck v Halperin*, 277 Mich App 558, 565; 747 NW2d 311 (2008). Accordingly, the argument was preserved.

[4] Rehman asserts that the proper standard of review is an abuse of discretion, because the disagreement lies with the trial court's application of the facts to the law. See *Maldonado v Ford Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (holding that decisions that fall within a court's inherent authority are reviewed for an abuse of discretion). However, we conclude that the parties' disagreement concerns a question of law, primarily the proper application of the made whole doctrine, which this Court reviews de novo. *Moore*, 482 Mich at 516.

other." *Hartford Acc & Indem Co v Used Car Factory, Inc*, 461 Mich 210, 215; 600 NW2d 630 (1999). A subrogee stands in the shoes of the subrogor and is entitled to assert all claims which the subrogor could have asserted. *Commercial Union Ins Co v Medical Protective Co*, 426 Mich 109, 117-118; 393 NW2d 479 (1986) (citation omitted). As such, Zurich, as a subrogee of Broder, stands in Broder's shoes and is entitled to assert all claims which the insured could have asserted. Lending further support is the principal that, on payment of any loss on behalf of its insured, an insurer is entitled to be subrogated to any right of action that its insured could have maintained against a third party whose negligence or wrongful act caused the loss. *Lahti v Finnish Mut Fire Ins Co,* 76 Mich App 398, 401; 256 NW2d 610 (1977).

On the other hand, Rehman asserts that the made whole doctrine applies. The made whole doctrine provides "that the insurer can recover from the insured, of the sum of insurance paid upon its policy, only the excess received from the wrongdoer, after full compensation for his loss, including the costs and expenses thereof." *Washtenaw Mut Fire Ins Co v Budd*, 208 Mich 483, 487; 175 NW 231 (1919). *Washtenaw Mut Fire Ins Co* involved a dispute between an insurer and its insured. *Id*. at 484. The insured had collected funds from the wrongdoer, and the Court declined to allow the insurer to recover funds because the insured had not been fully compensated for his damages. *Id*. at 487. The parties also discuss *Union Ins Soc of Canton, Ltd v Consolidated Ice Co Ltd*, 261 Mich 35; 245 NW 563 (1932). *Consolidated Ice* similarly upholds the application of the made whole doctrine, also as applied between an insured and an insurer. *Id*. at 36-37, 38-39.

In determining whether the made whole doctrine applies, Zurich and Broder assert that the rule only applies between an insurer and an insured, as illustrated by *Washtenaw Mut Fire Ins Co* and *Consolidated Ice*. Rehman concedes that in order for the made whole doctrine to apply, he would need to be considered co-insured with Broder under the Zurich policy. Rehman's only legal basis for asserting that he was a co-insured with Broder under the Zurich policy is *New Hampshire Ins Group v Labombard*, 155 Mich App 369; 399 NW2d 527 (1986). Rehman asserts that *Labombard* stands for the proposition that landlords and tenant are co-insureds under a landlord's insurance policy. We disagree with Rehman's conclusion and application of *Labombard* to the present case. In *Labombard*, the plaintiffs, an insured and insurer, filed a negligence claim against the defendant tenant for fire damage. *Id*. at 370-371. The tenant argued that she was not liable for the loss, and the Court agreed, holding:

> We are persuaded that a tenant may reasonably expect that his or her rental payments will be used to cover the lessor's ordinary and necessary expenses, including fire insurance premiums. Tenants reasonably expect that, by effectively contributing to the premium payments, they will occupy a position akin to the insured and will be free from tort liability for negligently caused fire damage to the premises. We hold that, absent an express and unequivocal agreement by a tenant to be liable to the lessor or the lessor's fire insurer in tort for negligently caused fire damage to the premises, the tenant has no duty to the lessor or insurer which would support a negligence claim for such damages. [*Id*. at 376.]

We are not persuaded that the holding in *Labombard* is applicable to the current case. As Zurich and Broder point out, *Labombard* addresses a situation where an insured and insurer sue a tenant for property damage. *Id*. at 370-371. The holding in *Labombard* cannot be extended so far as to

hold, generally, that all tenants should legally be considered as co-insured on a landlord's insurance policy. Moreover, as the case suggests, and Zurich and Broder acknowledge, many insurance companies include agreements in insurance policies holding tenants liable for negligently caused fire damage. See *Laurel Woods Apts v Roumayah*, 274 Mich App 631, 637-638; 734 NW2d 217 (2007) (holding that *Labombard* does not apply where lease language is clear and unambiguous that a tenant is liable for damage). Given that Bowles's liability does not appear to be at issue, it seems probable that Bowles's lease did include such an agreement. In addition, it is undisputed that Rehman's lease contained such a provision.

Rehman further asserts that the insurance policy between Zurich and Broder itself supports that he was co-insured with Broder under the policy. We disagree. Rehman relies on a portion of the policy entitled "net leasehold interest." This provision provides:

> **1. Consequential Loss--Net Leasehold Interest**
>
> We will pay for the loss of "net leasehold interest" you sustain when your lease is cancelled:
>
> a. By the lessor; and
>
> b. As a result of a valid condition of your lease,
>
> due to direct physical loss of or damage to "real property" or "personal property" directly caused by a "covered cause of loss" at a "premises" or "reported unscheduled premises". We will not pay more than the "net leasehold interest" at the time of the cancellation of the lease.

Rehman alleges that this portion of the insurance policy applies to him, thus proving that he is co-insured with Broder, presumably because of the word "lease." However, we agree with Zurich and Broder's reading—that the "you" and "your" stated in the clause refers to Broder. Thus, the provision applies in the event Broder leases property and acts as a tenant. This is further supported by that fact that the named insured on the policy is Broder, and the policy endorsement provides:

> **DEFINITIONS AND MEANINGS**
>
> Throughout this Commercial Property Coverage Part, the words "you" and "your" refer to the Named Insured shown on the Commercial Property Coverage Part Declarations. The words "we", "us", and "our" refer to the Company providing this insurance coverage.

Therefore, we disagree that the policy itself supports Rehman's arguments.[5] Further, to the extent that Rehman asserts, consistent with the logic of *Labombard*, that he reasonably expected

---

[5] In Rehman's brief on appeal, he also asserts that another portion of the policy referring to "tenant improvements and betterments" supports that he was co-insured. However, Rehman did

Broder to provide insurance, we disagree. Rehman's argument is disingenuous in light of the fact that his lease with Broder required him to have $50,000 renter's insurance, and he did not have the requisite insurance, thereby breaching his lease.

Overall, we conclude that the made whole doctrine did not apply. Rehman's assertion that he was co-insured under the insurance policy between Zurich and Broder is not legally supportable given the applicable law and documentary evidence. Further, neither party provided legal support for the proposition that the made whole doctrine should apply in the instance that Rehman was not considered co-insured. In addition, the collateral source rule properly applies to Broder. It is undisputed that Zurich is a subrogee to Broder, and, as such, stands in Broder's shoes. *Commercial Union Ins Co*, 426 Mich at 117-118; see also *Lahti v Finnish Mut Fire Ins Co*, 76 Mich App at 401. Accordingly, the collateral source rule applies to Zurich as a subrogee to Broder. Thus, we agree that the trial court erred in refusing to allow Zurich to collect from the interpleaded funds.

Rehman also claims that the trial court did not abuse its discretion based on its broad equitable powers. Rehman's legal support provides little guidance, but he seems to assert that because subrogation is based in equity, *Hartford Acc & Indem Co v Used Car Factory, Inc*, 461 Mich 210, 215; 600 NW2d 630 (1999), the trial court had broad discretion in distributing the interpleaded funds. We disagree. The trial court's order was based on the made whole doctrine. Rehman claims that the trial court provided an alternate reason for its decision—that the court was "satisfied Zurich and Broder are not in equity on equal standing as Rehman and Barnes." Even assuming this were considered an "alternate basis" for the trial court's holding, it is insufficient to support the trial court's holding, particularly in light of *Moore v McDowell*, 54 Mich App 657; 221 NW2d 446 (1974). In *Moore*, this Court held:

> Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon equal footing, and will decree a pro rata distribution or payment. [*Id*. at 661 (citation omitted).]

Based on *Moore*, the trial court should have ordered a pro rata distribution of the funds, including Zurich's claim.

---

not attach that portion of the policy to his brief, and it is not in the lower court record. In the trial court, Rehman only attached a single page of the insurance policy which stated that it provided coverage for "tenant's improvements and betterments," without further explanation of those benefits. Therefore, this argument is not addressed. The appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Broder and Zurich, the prevailing parties, may tax costs. MCR 7.219.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood